**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2867-18T4

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

KEMAL ALBUT, a/k/a KEMEL
ALBUT, and KEMAL ALBERT,

    Defendant-Respondent.

_____

Argued October 7, 2019 – Decided January 14, 2020

Before Judges Rothstadt and Moynihan.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Indictment No. 09-04-0422.

Christopher W. Hsieh, Chief Assistant Prosecutor, argued the cause for appellant (Camelia M. Valdes, Passaic County Prosecutor, attorney; Christopher W. Hsieh, of counsel and on the brief).

Adam W. Toraya, Designated Counsel, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney; Adam W. Toraya, on the brief).

PER CURIAM

We granted the State leave to appeal from the Law Division's order granting defendant Kemal Albut's petition for post-conviction relief (PCR). Defendant's petition was entered after the PCR judge rejected defendant's arguments that his trial and appellate counsel rendered ineffective assistance of counsel (IAC), but concluded that defendant was deprived of due process by the court's failure to conduct a pretrial conference or receive from counsel a pretrial memorandum under Rule 3:9-1(f).

On appeal, the State argues the following point to us:

> POINT I
>
> BECAUSE TRIAL COUNSEL COMPETENTLY ADVISED DEFENDANT REGARDING EXTENDED TERM SENTENCING CONSEQUENCES OF GOING TO TRIAL VERSUS ACCEPTING A GUILTY OFFER, THE TRIAL COURT'S INADVERTENT FAILURE TO REPEAT THOSE ADVISEMENTS DURING A [RULE] 3:9-1(f) PRETRIAL CONFERENCE OR PRETRIAL MEMORANDUM DID NOT GIVE RISE TO A DUE PROCESS VIOLATION.

Having considered the State's argument in light of the record and applicable legal principles, we reverse the PCR judge's determination as it was unsupported by any controlling law.

We summarize the pertinent facts from the record. In 2009, a grand jury charged defendant in a five-count indictment with first-degree murder, N.J.S.A.

2C:11-3(a)(1) or (2), first-degree attempted murder, N.J.S.A. 2C:5-1, and weapons charges, all arising from a 2008 shooting that caused one person's death and the injury of another. After his trial in 2011, a jury convicted defendant of the lesser-included offenses of aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1), aggravated assault by attempting to or causing bodily injury with a deadly weapon, N.J.S.A. 2C:12-1(b), and the weapons charges. At his January 19, 2012 sentencing, in response to the State's motion, the trial judge sentenced defendant in the extended term under N.J.S.A. 2C:44-3(a), to an aggregate sentence of life in prison, subject to an eighty-five percent period of parole ineligibility, under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

Defendant appealed his convictions and argued his sentence was excessive. We affirmed, State v. Albut, No. A-3389-11 (App. Div. Apr. 15, 2015); and the Supreme Court denied defendant's petition for certification. State v. Albut, 222 N.J. 19 (2015).

On October 6, 2015, defendant filed a petition for PCR. In his petition, defendant argued eight reasons why he received IAC from both his trial and appellate attorneys. Defendant's petition was considered by the PCR judge on June 29, 2017. At the conclusion of oral argument, the PCR judge rejected all but one of defendant's contentions. Specifically, the judge ordered that an

evidentiary hearing be held on defendant's argument that trial counsel provided IAC by "fail[ing] to counsel defendant to avoid an extended term of imprisonment."

The hearing took place over three days in 2018, almost ten years after defendant's indictment and counsel being assigned to him. At the hearing, each of the three attorneys that represented defendant before and during his trial and sentencing testified about whether defendant was informed that if he was convicted, he would be facing a sentence in the extended term of up to life in prison, and whether he should accept a plea offer from the State. Although two of defendant's previous attorneys could not specifically remember having a conversation with defendant about his possible sentence, they were experienced attorneys who recalled regularly communicating plea offers and possible sentencing outcomes with their clients. Defendant's last trial counsel, however, recalled talking to defendant before trial "about the plea offer" and that he was "extended term at that point in time."

Defendant also testified about whether he was ever advised of the possibility of a life sentence and about plea offers that were being discussed. According to defendant, had he been advised of a possible life sentence, he would have accepted the plea offer that he understood called for him to plead

guilty to aggravated manslaughter in exchange for the State recommending a sentence of twenty-four years subject to NERA. According to defendant, after the matter was scheduled for trial, and during the days leading up to the trial date, he was still attempting to negotiate a better plea offer than the twenty-four years offered by the State. When those efforts proved unsuccessful, he decided to take his chances on going to trial because he believed he would be facing thirty years if convicted.

Under cross examination, however, defendant confirmed he understood that if he went to trial on the murder charges, if convicted, he would face a term of life imprisonment, and rather than accept a plea offer, he opted to "take the chance at trial." He also acknowledged that he spoke to his attorneys about the State's plea offers, and that considering his prior record, he understood before trial that he was facing a sentence of thirty years to life if he was convicted of murder. Moreover, he also understood that if he did not accept one of the State's multiple plea offers, he would have to go to trial. According to defendant, he rejected the plea offers because he wanted to go to trial.

At the hearing, it was established that a pretrial conference under Rule 3:9-1(f) never occurred and that counsel never submitted a pretrial memorandum. In considering defendant's argument that he was entitled to relief

under Rule 3:22-2(a), the PCR judge defined the issue before him as "(1) whether [defendant]'s right to due process was violated when neither a [p]retrial [c]onference was held nor a [p]retrial [m]emorandum prepared pursuant to the Rules; and (2) whether counsel was ineffective for not advising [defendant] of the potential consequences of a guilty verdict following trial . . . ."

As explained in his thoughtful, comprehensive written decision granting defendant relief, the PCR judge found that "defendant was not made aware by the court or counsel that upon the setting of a trial date plea negotiations would terminate pursuant [to] Rule 3:9-3(g)." According to the PCR judge, this was a "material element of . . . plea negotiation[s]," and "the failure to explicitly and timely convey that essential element" could result in a "manifest injustice."

The judge then applied the evidence adduced at the hearing to the two-prong test for PCR under Strickland v. Washington, 466 U.S. 668 (1984), and found defendant failed to establish that any of his attorneys' performance of services on his behalf amounted to IAC. Specifically, as to counsels' discussions with defendant relating to the State's plea offers and defendant's exposure if he went to trial, the judge stated the following:

> [Defendant] has failed to meet his burden by presenting
> no factual evidence for his claim that his attorneys did
> not discuss the plea offer or potential sentences [he]
> faced at trial. Each trial counsel testified credibly that

they discussed with all their clients, [defendant] included, the legal consequences of accepting plea offers and the risks and exposures by electing to proceed to trial. This court finds all three attorneys met with the [defendant] multiple times and followed their normal practice of discussing the details and significances of accepting a plea offer as well as the potential consequences of going to trial, including the sentencing exposure of life imprisonment upon conviction.

[(Emphasis added).]

The judge also found that defendant failed to establish the second Strickland prong because "the impediment" to defendant securing "a plea bargain . . . to avoid the maximum exposure he faced" was not due to "counsel[s'] failure to advise as to that maximum exposure and the implications of rejecting the State's plea offer," rather it was "the court's" fault. For that reason, the PCR judge concluded defendant was entitled to relief because the failure to conduct the pretrial conference was a due process violation since the court never advised defendant in person of the possibility of a sentence to life in the extended term, and that after the pretrial hearing all plea offers would be withdrawn.

The PCR judge also found that because "every indication [was] that [defendant] rejected the State's offer of twenty-four years with the understanding that his maximum exposure would be thirty years, not life," he ordered that

A-2867-18T4

defendant be resentenced within the parameters of the plea negotiations and the maximum ordinary exposure for the offenses for which he was convicted. Finally, the PCR judge rejected any contention that defendant's application was procedurally barred because the trial court did not conduct the required pretrial conference, causing

> multiple deficiencies in that the defendant was never definitively told his final plea offer, was never told whether or when negotiations had irrevocably ceased, and never received the mandated benefit of a court gauging the completeness of his understanding regarding sentencing exposure under various scenarios (conviction of [a]ggravated [m]anslaughter versus [m]urder, e.g.) for the very charges he stood trial. In other words, there was a complete abdication of compliance with the five factors set forth under Rule 3:9-l(f).

The judge concluded by stating the following:

> Fundamental fairness and due process demand a defendant be definitively apprised of the State's last best plea offer, the virtually irrevocable cessation of plea negotiations and the penal consequences of rejecting the State's plea in the event of conviction. These aspects of due process are embodied in Rule 3:9-1(f) and Rule 3:9-3(g). The function of counsel cannot supplant the court's ultimate responsibility to convey these concepts and to determine whether they have been understood. The trial court's duty in this regard was not fulfilled. Absent even a preponderance of evidence that defendant understood these elemental aspects of the prosecution against him, the original sentence imposed cannot stand.

A-2867-18T4

The PCR judge stayed his order in response to "both parties['] . . . intention to appeal an adverse ruling." Thereafter, we granted the State's motion for leave to appeal.

In our review, we defer to the PCR judge's findings so long as they are "supported by sufficient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013). See State v. Elders, 192 N.J. 224, 244 (2007) ("A trial court's findings should be disturbed only if they are so clearly mistaken 'that the interests of justice demand intervention and correction.'"). Legal conclusions which flow from those facts, however, are reviewed de novo. Nash, 212 N.J. at 540-41.

On appeal, the State contends that while the PCR judge correctly determined that defendant failed to establish IAC as to either trial or appellate counsel, the judge erred when he concluded "that defendant suffered a due process violation because the trial [judge] failed to inform defendant of his extended term exposure in open court and in a pretrial memo in accordance with [Rule] 3:9-1(f); and because the trial [judge] failed to inform defendant in open court that 'plea negotiations would cease upon the scheduling of a trial date.'" We agree.

At the outset, we disagree with the PCR judge's legal conclusion that defendant's petition was not procedurally barred by Rule 3:22-4(a)(2) because defendant failed to raise any argument about the trial judge's failure to hold a pretrial conference or require the submission of pretrial memorandum before his conviction or in his direct appeal. The Rule specifically bars any ground for relief that could have been raised earlier unless one of three exceptions apply: (1) the issue could not have reasonably been raised, (2) enforcement of the bar would result in fundamental injustice, or (3) denial of relief would be contrary to state or federal constitutional mandate. We conclude that none of the exceptions apply here.

Even if the petition was not barred, we conclude that under the circumstances presented, where a PCR judge conducts an evidentiary hearing and finds that counsel properly advised defendant about the consequences of accepting a plea as compared to going to trial, and that defendant faced a sentence in the extended term, the trial court's failure to conduct a pretrial conference under Rule 3:9-1(f) does not justify granting a defendant relief.

Rule 3:9-1(f) provides:

> If the court determines . . . that all reasonable efforts to dispose of the case without trial have been made and it appears that further negotiations or an additional status conference will not result in disposition of the case, or

progress toward disposition of the case, the judge shall conduct a pretrial conference. The conference shall be conducted in open court with the prosecutor, defense counsel and the defendant present. Unless objected to by a party, the court shall ask the prosecutor to describe, without prejudice, the case including the salient facts and anticipated proofs and shall address the defendant to determine that the defendant understands: (1) the State's final plea offer, if one exists; (2) the sentencing exposure for the offenses charged, if convicted; (3) that ordinarily a negotiated plea should not be accepted after the pretrial conference and a trial date has been set; (4) the nature, meaning and consequences of the fact that a negotiated plea may not be accepted after the pretrial conference has been conducted and a trial date has been set and (5) that the defendant has a right to reject the plea offer and go to trial and that if the defendant goes to trial the State must prove the case beyond a reasonable doubt. If the case is not otherwise disposed of, a pretrial memorandum shall be prepared . . . . The pretrial memorandum shall be reviewed on the record with counsel and the defendant present and shall be signed by the judge . . . .

The pretrial conference under the Rule has a significant impact on further plea bargaining due to the plea cut-off rule. "After the pretrial conference has been conducted and a trial date set, the court shall not accept negotiated pleas absent the approval of the Criminal Presiding Judge based on a material change of circumstance, or the need to avoid a protracted trial or a manifest injustice." R. 3:9-3(g). Rule 3:9-1(f) therefore requires the prosecutor to present all plea offers to defense counsel in writing and the trial judge to ask the prosecutor to

A-2867-18T4

describe the State's final plea offer as part of the procedure for implementing the plea cut-off rule.

The Rule also requires a pretrial memorandum setting forth the State's final plea offer if the case is not disposed of at the pretrial conference. See R. 3:9-1(f). The pretrial memorandum sets forth the pending charges, maximum possible sentence on each charge, whether defendant qualifies for an extended term, maximum parole ineligibility period, and the State's final plea offer. The pretrial memorandum also asks the defendant to confirm his understanding that "if you reject this plea offer, the [c]ourt could impose a more severe sentence than recommended by the plea offer, up to the maximum sentence permitted if you are convicted after trial" and, if he chooses to "reject this plea offer today, no negotiated plea can be accepted by this [c]ourt unless specifically authorized by the Criminal Presiding Judge pursuant to [Rule] 3:9-3(g)." Administrative Directive #5-02, "Pretrial Memorandum (R. 3:9-1); Written Acknowledgment (R. 3:16)" (Aug. 21, 2002), superseded by Administrative Directive #23-17, "Pretrial Memorandum and Written Acknowledgment (Notice of Trial)" (Aug. 21, 2017).

Here, the PCR judge found the record contained no indication that the trial court conducted a pretrial conference or required the submission of a pretrial

memorandum. Thus, defendant was not advised by a judge in open court of the State's final plea offer and the consequences of rejecting that offer. We conclude the evidence supports the judge's finding.

We also agree with the PCR judge that, where neither a court nor counsel advises a defendant that he is facing a sentence in the extended term if he goes to trial, "an extended term cannot be imposed unless the defendant is specifically apprised at the time of the plea of the potential number of years to which he is exposed." See State v. Cartier, 210 N.J. Super. 379, 381 (App. Div. 1986). "No matter which way the defendant ultimately chooses to plead, he should know the risk he faces." State v. Martin, 110 N.J. 10, 19 (1988) (vacating sentence and remanding for hearing on mandatory extended term sentence); see also Lankford v. Idaho, 500 U.S. 110, 127 (1991) (holding that due process of law was denied by the imposition of a death sentence when neither the defendant nor his counsel had notice of the possibility that such a sentence might be imposed).

For that reason, where a defendant turns down a plea offer without knowing that he faces sentencing in the extended term, a proper remedy would be to resentence him in the range contemplated by the last plea offer. That remedy appears to be "the best accommodation of 'pragmatic necessity' and 'essential fairness.'" State v. Kovack, 91 N.J. 476, 486 (1982).

A-2867-18T4

We part company with the PCR judge's finding, however, that under the circumstances of this case, relief was warranted. Here, the judge found that all of defendant's attorneys had reviewed with defendant the terms of the State's plea offers and that defendant would be facing a maximum sentence of life in prison if he was convicted at trial. That finding was supported by trial counsels' and defendant's testimony at the evidentiary hearing, including his confirmation that with that knowledge, he rejected plea offers because he wanted to go to trial.

We are satisfied that the concerns about a defendant being properly informed about plea offers and the consequences of either accepting a plea or going to trial were adequately addressed by trial counsels' unrefuted conversations with defendant and that he understood those consequences and chose to go to trial. We find no support in the record for the PCR judge's conclusion that defendant maintained a reasonable expectation that if he was tried, he would only be facing a term of twenty-four or thirty years, especially in light of the advice about exposure that the PCR judge found defense counsel had given to defendant before he decided to go to trial.

Finally, contrary to the PCR judge's legal conclusion, we also find no due process violation with defendant not being told about a plea cut-off date, as it was undisputed at the hearing that plea negotiations continued right up to the

14

days just preceding trial and that those negotiations ended when defendant rejected the last offer.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2867-18T4